UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Cr. No. 03-10364-RWZ |
| ) | |
| KENNETH WAGNER ) | |

**KENNETH WAGNER'S MOTION FOR PRODUCTION OF DISCOVERY**
**(Memorandum Incorporated)**

Now Comes defendant, Kenneth Wagner, who respectfully moves this Court to order the government to produce the following discovery:

1. All documents in the possession or control of the government that demonstrate that the U.S. Attorney's office or its agents possessed or reviewed Mr. Wagner's private personnel records or medical/psychiatric files maintained by the Federal Aviation Administration or its agents or obtained information from indirectly or directly from others who did the same in violation of Mr. Wagner's right to privacy as codified by Title 5 U.S.C. ¶552, ¶552(b)(6) and 552(e)(c)(3) and his rights pursuant to the Fourth and Fifth Amendments to the United States Constitution. See also Title 5 U.S.C. ¶ 551, et seq.[1] and Doe v.

---

[1] Defendant seeks judicial review of an agency wrong caused by the improper disclosure of his private employment records and medical records by the FAA to the United States Attorney's Office or Department of Justice pursuant to ¶ 551 and Title 5 U.S.C. ¶ 702. See Chrysler Corp. v. Brown, 441 U.S. 281, 317-19 (1979)

1

Stevens, 851 F.2d 1457, 1466-68 (DC DC 1988); Covert v. Harrington, 876 F.2d 751 (9th Cir. 1989)

    a. If such documents are in the possession and control of the government, then defendant seeks any and all documents which demonstrate how the government obtained these private documents or information and whether releases and authorizations were obtained from Mr. Wagner. If these were received by federal subpoena, then the distribution and disclosure constitute an abuse of process in violation of Title 5 U.S.C. ¶ 552 and his rights pursuant to the Fourth and Fifth Amendments to the United States Constitution.

    b. If such documents are in the possession and control of the government, then defendant seeks any documents or information which would establish when the government received these documents; specifically whether the government received them prior to the grand jury proceedings in the instant case.

    2. All statements in the possession or control of the government, whether memorialized or not, by any person who alleged that Mr. Wagner provided false, incomplete or inaccurate medical or psychiatric documents or information to the FAA. Again, if the government obtained such statements from the FAA or its agents, and their basis of knowledge for Mr. Wagner's alleged false statements is derived from a review of Mr. Wagner's private personnel records or medical/psychiatric files maintained by the

FAA or its agents, then such statements or information were obtained in violation of Title 5 U.S.C. ¶ 552 and his rights pursuant to the Fourth and Fifth Amendments to the United States Constitution.  See Doe v. Stevens, supra.

3. Any evidence that any information or records relating to Mr. Wagner's private personnel records or medical/psychiatric files that were maintained by the FAA or its agents were presented to the grand jury that indicted Mr. Wagner in the instant case.  If such evidence was presented to the grand jury, then this Court must redact that improper testimony and evidence pursuant to ¶ 552 and Mr. Wagner's rights pursuant to the Fourth and Fifth Amendments to the United States Constitution and determine whether the grand jury heard sufficient evidence to indict Mr. Wagner. See Doe v. Stevens, supra.  This request satisfies the materiality requirement of Fed.Crim.P. Rule 6(E).

4. Any evidence that demonstrates that the FBI Agents or other law enforcement agents who interviewed Mr. Wagner either improperly possessed, reviewed or were informed of the contents of Mr. Wagner's private personnel records or medical/psychiatric files that were maintained by the FAA or its agents in violation of Title 5 U.S.C. ¶ 552 or Mr. Wagner's Fourth and Fifth Amendment rights.  Mr. Wagner needs this discovery in order to file a motion to suppress his statement as well as any investigatory leads that were developed from these improper and

illegal disclosures. See Doe v. Stevens, supra.

In support of this motion, defendant states that he was indicted by the U.S. Attorney's Office for allegedly making a false statement as apart of his application for re-certification as a flight controller with the FAA. The specific allegation is that he provided false, incomplete or inaccurate medical or psychiatric information on this application.[2] This alleged falsehood was discovered after Mr. Wagner supplied medical documents to the FAA as part of a request for medical leave based upon stress in 2003.

The likelihood that the FAA improperly provided the federal government with private information and records relating to Mr. Wagner's medical condition is extremely high as there could be no other source for the information that led to his indictment. See Title 5 U.S.C. ¶ 552, et eq, ¶ 552(b)(6). See Affidavit of Counsel attached as Exhibit A and statement by Kenneth Wagner attache as Exhibit B. See also Doe v. Stevens, supra. If any of these protected documents or information was directly or indirectly presented to the grand jury, then the indictment may be sufficiently tainted to require dismissal. See Rule 6(E) Defendant will also seek suppression of these documents as well

---

[2] If the government contends that there is a separate or different basis for the false statement, then defendant also moves this Court for leave to file a Bill of Particulars at a later date. At present time, defendant has no grounds to believe that the government indicted him for any other statement.

4

as his own statement to the FBI on the grounds that it was tainted by records or information improperly disclosed in violation of the Privacy Act and defendant's Fourth and Fifth Amendment rights.

Based upon the above discussion, defendant discovery requests are relevant, material and necessary to the proper disposition of this case, a determination of whether his indictment should be dismissed and his statement suppressed and to protect Mr. Wagner's constitutional and statutory rights. Mr. Wagner, therefore, moves for the disclosure of these documents and for an evidentiary hearing, if necessary, to determine the extent of the improper disclosures.

Respectfully submitted,
BY HIS ATTORNEY,

_____
JAMES H. BUDREAU, BAR#553391
20 Park Plaza, Suite 905
Boston, MA 02116
(617) 227-3700

I hereby certify that a true and correct copy of the foregoing document was served by hand on the 18th day of February 2004 to Assistant U.S. Nadine Pellegrini by hand.

_____
James H. Budreau

5

## AFFIDAVIT OF COUNSEL

I, James Budreau, do depose and state that the following is true and accurate to the best of my knowledge:

1. I represent Kenneth Wagner in the above referenced matter.

2. Mr. Wagner worked for the federal Aviation Administration (FAA) for approximately 18 years as a flight controller before his indictment in the instant matter.

3. In or about 2003, Mr. Wagner supplied the FAA and its doctors with medical/psychiatric records to support his claim for medical leave.

4. These records were supplied with a belief that they were private and would not be disclosed to the public or any other governmental agency. He supplied these voluntarily in an effort to secure medical leave because of mental stress.

5. These records allegedly contradict an earlier medical certification filed by the defendant where he failed to indicate that he had been treated for specified mental disorders and had been prescribed medications for that purpose.

6. Based upon attorney-client privileged conversations, the nature of the indictment and the questions asked by the FBI agents who interviewed Mr. Wagner, it appears that the FBI and the DOJ improperly gained access to these private medical documents and files during their investigation. It is also appears that they used these protected documents to obtain an indictment and to question Mr. Wagner.

Signed under pains and penalties of perjury,

_____
JAMES BUDREAU

A 6

042R002C001

## INTERVIEW OF KENNETH JOSEPH WAGNER

On December 4, 2003, Kenneth Joseph WAGNER, 465 Lunns Way, Plymouth, Massachusetts, 02360, telephone: (508)743-8390, was interviewed by Special Agent(s) Kevin Gaul and Leigh Hinson, U.S. Department of Transportation, Office of Inspector General (DOT-OIG) at the Massachusetts State Police, Troop F, Conference Room at Logan International Airport, 400 Terminal D, East Boston, Massachusetts, 02128.

WAGNER presented himself at the conference room accompanied by a US DOT / Federal Aviation Administration (FAA) union representative at approximately 12:20 p.m. SA Gaul apprised WAGNER of his identity and explained that he needed to speak with him concerning a legal matter. SA Gaul explained to WAGNER that he could have his union representative present in the very near future, but that the subject matter of which they would speak may concern issues that WAGNER may wish to remain private. WAGNER elected to be informed of the pending matter by SA Gaul while his union representative waited outside of the conference room.

At 12:28 p.m. SA Gaul reiterated that WAGNER could have any representative present that he wanted if he chose to be interviewed.

SA Gaul served the federal summons on WAGNER compelling his appearance before the United States District Court, Boston, Massachusetts, at approximately 12:29 p.m. December 4, 2003. WAGNER was also provided with a copy of the attached indictment (Attachment A).

WAGNER stated that in July of 2003 he was told that the FAA was looking into discrepancies in his medical record. On November 1st, 2003, he received a letter alleging that he had falsified documents, but the letter did not provide WAGNER with any specific information.

SA Gaul informed WAGNER that he did not have be interviewed, was free to leave at any time, and was free to seek the advice of his representative at any time.

---

Prepared by:  Leigh Hinson, SA                    Date Prepared:  12/29/03

DEPARTMENT OF TRANSPORTATION-OFFICE OF INSPECTOR GENERAL

1/7

FOR OFFICIAL USE ONLY
(Public availability to be determined under 5 U.S.C. 552)

IG F 1600.3 (3/82)




B

042R002C001

## INTERVIEW OF KENNETH JOSEPH WAGNER

WAGNER indicated that he understood that he was free to leave and was speaking voluntarily.

WAGNER indicated that in April of 2003, he left work for a period of extended sick leave. During his sick leave WAGNER called the Dr. Paul CLARK, Regional Flight Surgeon (RFS), FAA New England, and released all of his medical records for CLARK's review.

WAGNER was shown the attached copy of Page 1 of the attached FAA Form 8500-8, dated 09/05/2001, (Attachment B). WAGNER confirmed that the form contained his signature and appeared to be a form that he completed. WAGNER's attention was directed towards question number 18, which asks, "Medical History- Have you ever in your life been diagnosed with, had, or do you presently have any of the following?...m. Mental disorders of any sort; depression, anxiety, etc." The box for "No" is marked next to "m."

SA Gaul advised WAGNER that his medical record beginning in 2000 indicated that he was suffering from depression and was prescribed medications for depression.

With regard to the discrepancy between his medical record and the Form 8500-8, #18, m., WAGNER indicated that he had been off of the medicine at the time that he completed the form.

SA Gaul directed WAGNER's attention to #19 of the Form 8500-8 which asks about Visits to Health Professional within the Last 3 years. The box next to "No" is marked on the form.

When asked why he marked "No" when his medical record indicated that he had been seeing professionals since 2000, WAGNER stated that he did not list the medical professionals on the form and did not have a recollection of attending his 2001 physical.

DEPARTMENT OF TRANSPORTATION-OFFICE OF INSPECTOR GENERAL
2/7
FOR OFFICIAL USE ONLY
(Public availability to be determined under 5 U.S.C. 552)

IG F 1600.3 (3/82)

042R002C001

## INTERVIEW OF KENNETH JOSEPH WAGNER

WAGNER again confirmed that the signature at the bottom of the form was his signature. WAGNER indicated that he understood that without the completion of the form by himself and a medical professional he could not perform the duties of an air traffic controller. WAGNER's attention was then directed to the certification at the bottom of the form that states, "I hereby certify that all statements and answers provided by me on this application form are complete and true to the best of my knowledge, and I agree that they are to be considered part of the basis for issuance of any FAA certificate to me." WAGNER indicated that he signed the form and indicated that the information was correct.

WAGNER stated that the form, as he completed it, was correct because he was not taking medication at the time of the physical. He asserted that he had been taking the medication, but had stopped taking it in preparation for a family vacation.

With regard to why the Form #18 disagrees with his medical record concerning the diagnosis of any depression, WAGNER stated that he did not want to answer why.

With regard to why the Form disagrees with his medical record concerning his visits to medical professionals WAGNER stated that he could not tell the agents that he was trying to falsify the document or lie. He indicated that he did not recall the time frame of the physical and questioned that if he was trying to hide anything, why he would go to the FAA and provide them with his medical documents.

WAGNER explained that he had notes of the dates that he had conversations with the RFS CLARK. He stated that he thought that Dr. CLARK's notes are listened to over his own notes. WAGNER indicated that he had his notes of the conversations at home.

WAGNER reiterated that he did not recall actually completing the Form 8500-8 or the physical that accompanied the completion of the form. WAGNER indicated that it does appear that the statements on the form are contradictory to the medical record. He reiterated that at the time that he completed the form in 2001, he had

DEPARTMENT OF TRANSPORTATION-OFFICE OF INSPECTOR GENERAL
3/7
FOR OFFICIAL USE ONLY
(Public availability to be determined under 5 U.S.C. 552)

IG F 1600.3 (3/82)

042R002C001

## INTERVIEW OF KENNETH JOSEPH WAGNER

been prescribed medicine, but had quit taking it in advance of a vacation. At the time of the physical he was not taking it. In July (2003), he gave permission to the FAA medical people in Oklahoma to see his medical records. He never received a copy of any report from the Oklahoma people.

SA Gaul indicated that WAGNER's medical record also revealed that WAGNER had previously indicated that he reported having headaches three times per day. WAGNER stated that he has had headaches, but did not recall telling Oklahoma that he had headaches two or three times daily. WAGNER's attention was directed to the Form 8500, #18, (a) which applies to "Frequent or severe headaches." The box next to "No" is marked on the form.

WAGNER indicated that he felt that the headache question can be based on an interpretation, but he did not know how he would interpret it. WAGNER stated that he did not remember filling out the document, but could recall that the physician was Dr. Horen. WAGNER asserted that he had not forgotten about the physical, but could not recall actually completing the form. He recalled that Dr. Horen was in New Bedford, but could not specifically recall the office or of answering any questions from Dr. Horen. He indicated that in the past some of the past doctors who give these physicals have asked questions, but some did not. He could not recall whether Dr. Horen went over the questions on the form line by line or not.

WAGNER further stated that he could say, with a clear conscience, that he could not recall answering untruthfully or trying to lie on the form. He stated that he could look back now and guess at what was going on in his mind at the time of the physical. He had other things on his mind at the time of the physical and was going on vacation the next week. WAGNER kept a log of his vacation. He was also starting a new job after the vacation.

WAGNER indicated that he was contacted in July (2003) by Dr. Schwenevin (phonetic) in Oklahoma. Dr. Schwenevin telephoned WAGNER to try to piece together the timeline of his medical history. WAGNER consulted with his

---

DEPARTMENT OF TRANSPORTATION-OFFICE OF INSPECTOR GENERAL
4/7
FOR OFFICIAL USE ONLY
(Public availability to be determined under 5 U.S.C. 552)

IG F 1600.3 (3/82)

042R002C001

## INTERVIEW OF KENNETH JOSEPH WAGNER

vacation log to help Dr. Schwenevin. He could not recall what was going through his mind at the time that he completed the form. Depression has a huge stigma. WAGNER was embarrassed about his depression and indicated that it may have clouded his judgment or thinking. WAGNER stated that he could not tell the agents why the form is inaccurate. WAGNER reiterated that he was not taking any medicine at the time of the physical. It was prescribed to him, but he was not taking it. He was about to leave for vacation to Canada and wanted to have a good time. He does not know if he misread or misinterpreted the questions and could not recall saying that he had three headaches a day. He recalls saying that he had had headaches, but not three times per day.

When asked how the other air traffic controllers view the physical and the form 8500-8, WAGNER indicated that the controllers he knows do not think that the form is that big of a deal. They just fill it out and go get their physical. He indicated that it is a good theory that the form is important to the controllers, but does not think that people go in with that viewpoint. Other controllers simply complete the form and do not view it as something important. They just fill out the form and get out of there.

With regard to his conversations with Dr. Schwenamen, WAGNER stated Dr. Shwenamen's call was totally out of the blue. Dr. Schwenamen asked why WAGNER had not reported that he was taking medication on the form. WAGNER told the doctor that he didn't know that he was supposed to write it on the form. He didn't know what medicines were in the manual.

WAGNER further indicated that if one looked at his Form and then looked at his medical record one would find discrepancies. WAGNER does not know if the discrepancies were intentional, were covering up, or were lies on his part. He does not believe so, but cannot recall his mind at the time. WAGNER went to the FAA and told them of his illness. He released his medical statements and he called Dr. CLARK.

DEPARTMENT OF TRANSPORTATION-OFFICE OF INSPECTOR GENERAL
5/7
FOR OFFICIAL USE ONLY
(Public availability to be determined under 5 U.S.C. 552)

IG F 1800.5 (3/82)

042R002C001

## INTERVIEW OF KENNETH JOSEPH WAGNER

WAGNER explained that he and the RFS CLARK had a heated exchange during a telephone conversation. WAGNER indicated that CLARK had a negative view of mental health problems and called psychologists shrinks. WAGNER asserted that he did not call CLARK anonymously. He stated he told Dr. CLARK who he was and asked him if air traffic controllers are allowed to take some of the medicine. His response was that he did not think so.

WAGNER asserted that he went to the FAA and told them of his history. April 23rd or the 29th (2003) was his last day as a controller. He called CLARK at that point. He was not trying to tell CLARK anything inaccurate, he was going by memory. WAGNER called CLARK entirely on his own. At that time he had received no requests for information.

SA Gaul indicated that CLARK had written WAGNER three letters. The first was on May 9th (2003) and referenced that WAGNER was incapacitated for duty. On May 13th (2003) CLARK called for access to WAGNER's medical records. On May 28th (2003) CLARK received records from WAGNER's physician Dr. Kanarsky.

WAGNER indicated that the dates of the letters from CLARK are not indicative of the day that he received them. The letters were not sent promptly. WAGNER indicated that the situation was embarrassing until he went out on medical leave. After he went out on leave he realized that depression is a medical condition. He indicated that the RFS CLARK was very negative and used negative words like "shrink."

With regard to his discussion with CLARK, WAGNER indicated that he hung up on CLARK. WAGNER felt that Dr. CLARK had been no help to him. WAGNER feels that Dr. CLARK has done everything in his power to not help him. WAGNER told Dr. CLARK that he was the most arrogant individual that he had ever spoken to. Since the day of that conversation things have been difficult for WAGNER. WAGNER asked why, if he was trying to hide something, would he report his medical information to the FAA. WAGNER contends that he went to

DEPARTMENT OF TRANSPORTATION-OFFICE OF INSPECTOR GENERAL
6/7
FOR OFFICIAL USE ONLY
(Public availability to be determined under 5 U.S.C. 552)

IG F 1600.3 (9/82)

042R002C001

## INTERVIEW OF KENNETH JOSEPH WAGNER

the FAA first, but even if he didn't, why would he provide his doctor's name instead of finding another who would just say that he was fatigued.

With regard to the discrepancies between the 8500-8 and his medical record, WAGNER indicated that it is human nature to believe what the doctor's information showed. WAGNER stated that in the real world the form is not taken seriously and does not necessarily allow someone to be an air traffic controller. The form is not a key to being a controller.

At 1:12 p.m. the interview was concluded.

Identification:
Kenneth Joseph WAGNER
465 Lunns Way
Plymouth, MA 02360
Home telephone: 508-743-8390
DOB: 09-26-62
SSN: 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

- # -

DEPARTMENT OF TRANSPORTATION-OFFICE OF INSPECTOR GENERAL
7/7
FOR OFFICIAL USE ONLY
(Public availability to be determined under 5 U.S.C. 552)

IG F 1800.3 (3/82)

TOTAL P.08