UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )   Cr. No. 03-10363-RWZ<br>)<br>KENNETH WAGNER )  | |

**KENNETH WAGNER'S MOTION TO SUPPRESS**
**(Memorandum Incorporated)**

Now Comes, defendant, Kenneth Wagner, who respectfully moves this Court to (1) suppress Mr. Wagner's statement, which was illegally taken by investigators from the Department of Transportation (DOT) in violation of his Fifth and Sixth Amendment Rights to the United States Constitution and (2) order the preservation and production of notes taken by the agent of Mr. Wagner's statement. In support of this Motion, defendant states the following:

1. The United States Supreme Court recently found that in Fellers v. United States, 124 S.Ct. 1019, 1023 (January 26, 2004) that eliciting statements from a defendant post indictment was a Sixth Amendment violation if counsel was not present or a waiver of counsel was not obtained. Based upon the following, defendant moves this Court to suppress his statement based upon a Fellers core Sixth Amendment violation:

    a. On December 3, 2003, the federal government indicted Mr. Wagner for making false statements pursuant to Title

1

18 U.S.C. Section 1001. See Indictment attached as Exhibit A. The following day, December 4, 2004, two agents from the DOT approached Mr. Wagner and asked to speak with him. See Affidavit of Kenneth Wagner and DOT Report attached as Exhibits B and C respectively. Before Mr. Wagner spoke with the investigators, they served him with an indictment for the instant case. See Exhibits B and C.

    b. At no time prior to or during Mr. Wagner's statement to these DOT investigators did the government agents provide Mr. Wagner with Miranda warnings, any notice that he was entitled to counsel or ask him to waive his right to counsel. Exhibits B and C. See also Supplemental Affidavit of Kenneth Wagner attached as Exhibit D.

    c. Prior to giving the statement, Mr. Wagner asked if he could have a union representative present, but this request was rebuffed by the agents. See Exhibits B and C. The agents informed Mr. Wagner that he had been indicted and began asking him questions. Exhibits B, C and D.

    d. The agents did apprize Mr. Wagner that he was free to leave. Exhibits B and C. At no time, however, was he informed that he was entitled to legal counsel and no waiver of counsel was ever requested. Exhibits B, C and D.

    e. The fact that the agents approached Mr. Wagner and asked him if he wanted to be interviewed without waiting for the

accused to be arraigned and get counsel was clearly an attempt to circumvent his Sixth Amendment rights. See <u>United States v. Henry</u>, 447 U.S. 264, 274, 1000 S.Ct. 2183 (1980). The agents "intentionally created a situation likely to induce [the defendant] to make incriminating statements without the assistance of counsel." This solicitation of a statement from Mr. Wagner was a "knowing exploitation" of an opportunity to confront Mr. Wagner without counsel in clear violation of his Sixth Amendment rights. See <u>Maine v. Moulton</u>, 474 U.S. 159, 176, 106 S.Ct. 477 (1986) and <u>United States v. Bender</u>, 221 F.3rd 265, 268 (2000)

   f. The timing of interview (i.e., one day after the indictment and before his arraignment) together with the fact that the agents solicited the interview constitutes, by itself, an improper circumvention of Mr. Wagner's Sixth Amendment right to counsel. The agents should never have requested an interview from Mr. Wagner without going through counsel, or in this case, waiting for his arraignment to determine whether he would be represented or not. If in the interim, Mr. Wagner wanted to speak with them he was free to contact the DOT or United States Attorney's Office. Therefore, the mere solicitation of an interview under these circumstances was a violation of Mr.

3

Wagner's Sixth Amendment right to counsel.[1] See <u>Fellers v. United States</u>, <u>supra</u>. Mr. Wagner's statement to the DOT agents should be suppressed for this reason alone.

  g.  The failure of the DOT agents to advise Mr. Wagner of his Sixth Amendment rights and then obtain a waiver of counsel from the accused is another clear violation of <u>Fellers</u> and Mr. Wagner's basic or core Sixth Amendment right to counsel. <u>Id</u>. The agents' conduct clearly demonstrates that they "deliberately elicited" incriminating statements from Mr. Wagner in violation of hi Sixth Amendment rights. See <u>Fellers</u>, at 1020 ("deliberate-elicitation" standard is applied in Sixth Amendment cases). Mr. Wagner's statement must be suppressed as the circumstances of this case fall squarely within <u>Fellers</u>.

 2.  As Mr. Wagner's statement was obtained in violation of his core Sixth Amendment rights, i.e., without knowingly, intelligently and voluntarily waiving his right to counsel, his statement cannot be used to impeach him if he takes the stand in his own defense. See <u>United States v. Spencer</u>, 955 F. 2d 814, 819-820 (1992) Specifically, defendant moves this Court to find that this statement cannot be used for impeachment purposes and states the following in support:

---

[1] Whether or not the agents could have asked Mr. Wagner whether he had legal counsel or intended to represent himself need not be considered as the agents never even raised the question of legal counsel in any context before or during the improperly solicited interview.

4

a. The government has the burden of proving that the defendant's "confession" was given with a knowing, intelligent and voluntary waiver of his right to counsel under the circumstances of the instant case. See Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232 (1977) The government, clearly, cannot satisfy this burden given the facts of December 3 and 4, 2004. See Exhibits A, B, C and D.

b. The failure of the DOT investigators to (1) provide Mr. Wagner with notice of his right to counsel and (2) obtain a waiver of counsel prior to interviewing him constituted a core Sixth Amendment violation. Given that there is no evidence that Mr. Wagner intelligently, knowingly and voluntarily waived his right to counsel, the government cannot use his statement to impeach him if he decides to take the stand. See United States v. Spencer, supra. Compare United States v. Martin, 974 F.Supp. 677 (C.D. Ill. 1997)

c. While statements obtained in violation of Miranda type situations require that the Court determine that the "confession" was taken involuntarily (i.e., the statement was the product of government coercion or the defendant's will was overborne) before it can be used against a defendant for impeachment purposes, see Michigan v. Jackson, 475 U.S. 625, 636, 106 S.Ct. 1404 (1986)(dealing with the prophylactic rule developed under Edwards and Miranda and not core constitutional

5

violation)[2], that analysis changes when the police misconduct involves core Sixth Amendment violations as in Mr. Wagner's case. See United States v. Spencer, supra. See also Fellers v. United States, 124 S.Ct. at 1023 (Supreme Court ruled that application of "knowing and voluntary" standard was incorrect in Sixth Amendment cases and remanded case for further proceedings)[3] When the case involves a core Sixth Amendment violation, the government has the burden of demonstrating that the statement was obtained with a knowing, intelligent and voluntary waiver of the defendant's right to counsel. Id.

    d. As the evidence supports a finding that Mr. Wagner's statement was taken without a knowing, intelligent or voluntary waiver of his right to counsel, his statement cannot be used for impeachment purposes by the government. See United States v. Spencer, supra, and Fellers v. United States, supra.

---

[2] In Jackson, the court suppressed the statement and ruled that the police improperly initiated contact with a defendant after he invoked his right to counsel. While the Jackson court also ruled that the government could use the statement for impeachment as the defendant had not been coerced, that ruling was predicated on the fact that (1) the defendant had been previously advised of his Miranda warnings as required, and (2) this was a violation of the prophylactic rule established by Miranda/Edwards. Id. Unlike the instant case, the Jackson case did not involve a core Sixth Amendment violation. See discussion in United States v. Spencer, supra.

[3] The First Circuit Court of Appeals also made an incorrect reference to the standard of review for determining whether a suppressed statement could be used for impeachment purposes in a Sixth Amendment. See United States v. Bender, 221 F.3rd 265, 271 (1st Cir. 2000)

5. Even if, arguendo, the Court was required to apply the "knowingly and voluntarily" standard in Sixth Amendment cases to determine if the statement could be used for impeachment purposes, Mr. Wagner's statements would still be inadmissible for that purpose for the following reasons:

    a. The government has the burden of proving that Mr. Wagner's statement was voluntarily under a Fifth Amendment type analysis. See United States v. Bender, supra. A statement is involuntary if the accused was coerced or his will was overborne. United States v. Wilson, 787 F.2d 375, 380-381 (8th Cir.), cert. denied, 479 U.S. 857, 107 S.Ct. 197 (1986) The Court must consider the totality of the circumstances, including the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. Scheckloth v. Bustamonte, 412 U.S. 218, 225-26, 93 S.Ct. 2041 (1973) Coercive police pressure is a predicate for finding that the confession is not voluntary and violates the accused's due process rights. Colorado v. Connolly, 479 U.S. 157, 167, 107 S.Ct. 515 (1986) If this Court finds the statements involuntary, then the prosecution would be prohibited from using these statements at trial even for impeachment purposes. Mincey v. Arizona, 437 U.S. 385, 398, 98 S.Ct. 2408 (1987) See United States v. Va Lerie, 2003 WL 21953948 (D.Neb. 2003)(government failed to sustain its burden of proof in showing statement was

7

voluntary) attached as Exhibit E.

   b. The fact that the government deliberately elicited the statements from Mr. Wagner after he was indicted without a waiver of counsel or notice of Miranda warnings together with the agent's statement that Mr. Wagner could have been arrested but it would be better if he would speak to them, see Exhibits B, C and D, clearly created an atmosphere of intimidation and fear of arrest that overbore Mr. Wagner's will and coerced him into making an involuntary statement. It cannot be said that Mr. Wagner's decision to speak with these DOT agents was the "product of an essentially free and unconstrained choice...where his will has [not] been overborne and his capacity for self-determination [not] critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218, 224-25 (1973)

   c. As Mr. Wagner's statement was involuntary, the government should be precluded from using this statement to impeach him if he does in fact take the stand to testify. Defendant moves this Court to make such an order.

   6. Additionally, defendant seeks preservation of and copies of any and all notes taken by the DOT agents of his interview. Defendant has made a prima facie showing that these the reported interview is different from his recollection of the events in question. These notes are, therefore, exculpatory in nature. See United States v. Almohandis, Cr. 2004-10004-PBS (D.Mass.

8

2004) attached as Exhibit F.

Wherefore, defendant moves this Court to grant his (1) Motion to Suppress for the reasons stated above; and (2) order the preservation and production of notes of Mr. Wagner's statement.

Respectfully submitted,
BY HIS ATTORNEY,

_____
JAMES H. BUDREAU, BAR#553391
20 Park Plaza, Suite 905
Boston, MA 02116
(617) 227-3700

I hereby certify that a true and correct copy of the foregoing document was served by hand on the 9th day of April, 2004 to Assistant U.S. Nadine Pellegrini.

_____
James H. Budreau